**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

JOSEPH MENDOZA,

                             Plaintiff,

-against-

THE CITY OF NEW YORK and THE FIRE
DEPARTMENT OF THE CITY OF NEW YORK,

                             Defendants.

-------------------------------------------------------------------X

Docket No. :21-cv-2731

**COMPLAINT**

*PLAINTIFF DEMANDS*
*A TRIAL BY JURY*

Plaintiff JOSEPH MENDOZA, (hereinafter "Plaintiff"), by his attorneys, PHILLIPS &

ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendants, upon information

and belief, as follows:

## NATURE OF THE CASE

1.      Plaintiff complains pursuant to **Title VII of the Civil Rights Act of 1964**, as amended, 42

U.S.C. § 2000e *et seq*. ("Title VII"), **42 U.S.C.** § 1981 ("Section 1981"), **The Americans**

**with Disabilities Act of 1990**, 42 U.S.C. § 12101, *et seq*. ("ADA"), the **Uniformed**

**Services Employment and Reemployment Rights Act of 1994**, 38 U.S.C. § 4301-4333

("USERRA"), the **New York State Human Rights Law**, NYS Executive Law § 296, *et*

*seq*. ("NYSHRL"), and the **New York City Human Rights Law**, New York City

Administrative Code § 8-107 et seq. ("NYCHRL"); and seeks damages to redress the

injuries Plaintiff has suffered as a result of being **discriminated and retaliated against**

and being subjected to a **hostile work environment** by his employer due solely to his race,

national origin, disability, and uniformed service.

## JURISDICTION AND VENUE

2.      Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3), and 28 U.S.C. §§1331

and 1343.

3.      The Court has supplemental jurisdiction over the claims of Plaintiff brought under state and city laws pursuant to 28 U.S.C. §1367.

4.      Venue is proper in this district in that a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of the State of New York. 28 U.S.C. § 1391(b).

## PROCEDURAL PREREQUISITES

5.      Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 11, 2020, upon which this Complaint is based.

6.      Plaintiff received a Notice of Right to Sue from the EEOC, dated April 22, 2021, with respect to the instant charges of discrimination. A copy of the Notice is annexed to this Complaint.

7.      This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

8.      Prior to the commencement of this action, Plaintiff served a copy of this complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York on May 14, 2021, in accordance with N.Y.C. Admin. Code §8-502(c).

## PARTIES

9.      Plaintiff Joseph Mendoza (hereinafter "Plaintiff"), is resident of the State of New York, County of Queens, and a United States Navy veteran.

10.     At all relevant times herein, Plaintiff was and is a "person" and an "employee" entitled to protection as defined by the relevant federal, state, and local laws.

11.     Defendant City of New York ("City") is a municipal corporation duly organized and existing under the laws of the State of New York. Defendant City is an employer as defined by the relevant federal, state, and city laws. Defendant City is a "person" for purposes of

enforcement of the rights guaranteed under the relevant federal, state, and city laws.

12. Defendant City of New York maintains a fire department, the New York Fire Department, a/k/a the Fire Department of the City of New York ("FDNY"), and employs firefighters who, among other things, are responsible for protecting individuals and property in the City of New York.

13. Defendant FDNY is a department, agency, bureau and/or subdivision of the City. Defendant FDNY is a local government agency of New York City and is the employer of Plaintiff.

14. At all relevant times herein, Defendants "employed" fifteen and thus four or more "employees," and is thus an "employer" within the meaning of Title VII, the ADA, the USERRA, the NYSHRL, and the NYCHRL.

15. At all relevant times herein, Plaintiff was an employee of Defendants.

## FACTUAL ALLEGATIONS

16. Plaintiff retired from the United States Navy Corps in August 2010.

17. As a result of events that occurred during his military service, Plaintiff suffers from Post-traumatic Stress Disorder ("PTSD").

18. On June 29, 2015, Plaintiff began working as a Firefighter for Defendants earning $45,000.

19. During his employment with Defendants, Plaintiff's work performance always met or exceeded reasonable expectations, as evidenced by his promotion to First Grade Firefighter on June 29, 2020. Plaintiff was never written up as a firefighter for the entirety of his career.

20. As a First Grade Firefighter, Plaintiff earns a salary of $100,000 per year.

21. On or about November 7, 2015, upon first reporting with four other probationary firefighters to his firehouse, Engine 297/Ladder 130 in College Point, New York, firefighters there dumped a bucket of water followed by flour on Plaintiff from a window

above the entrance. Several firefighters laughed while video recording the incident.

22.     Upon information and belief, this behavior is a part of a hazing practice to which probationary firefighters are routinely subjected.

23.     From the first day of his employment, Plaintiff was subjected to insults and demeaning comments from several firefighters due to his race, national origin, and disability, and uniformed service, particularly from his colleague, Levy Matthews ("Matthews").

24.     In or around November of 2015, while working one of his first tours, Matthews approached Plaintiff in presence of other firefighters and said "Wow! They let the MS-13 join the FDNY now. Where the fuck they did they find you?"

25.     From that day on, Matthews began calling Plaintiff "machete" because, according to him, Plaintiff looked like a recurring film character named Machete that is played by Danny Trejo, a Latino American actor. Matthews went so far as to leave a machete on top of Plaintiff's locker.

26.     When Plaintiff confronted Matthews about the machete that was left on his locker, Matthews responded, "I have to be careful with you. I know you're fucking crazy because of your PTSD."

27.     Throughout his employment with Defendants, Plaintiff was told numerous times "No one cared" about his military career "in this house" and "Man up" about his "so-called" depression and PTSD.

28.     About the time when United States President Donald J. Trump ("Trump") was elected, Matthew yelled out "Yes! Finally the wall is going to be built! Sorry, Mendoza. Your family isn't welcomed here no more." At the time Plaintiff's step-father was having legal issues with United States Immigration and Customs Enforcement ("ICE") and Matthew was aware of this.

29.   After Trump won the election, the firehouse, with mainly white men from Long Island began chanting "Build the wall." Upon information and belief, these firefighters did this knowing Plaintiff had a father in ICE custody.

30.   The firefighters, mainly led by Matthews, also chanted "Make the Point great again."[1]

31.   Throughout the remainder of 2015 and 2016, Matthews would refer to Plaintiff as "Mexican" and "Spic." Matthews, who upon information and belief identifies as Jewish, told Plaintiff "Jews don't like you guys." Upon information and belief, "you guys" meant Latinos such as Plaintiff.

32.   Around the end of 2016, in order to transition from probationary status, Plaintiff was required not to exceed a certain weight. Because Plaintiff exceeded the target weight by five pounds, Plaintiff was sent by Defendants to another location to lose the weight.

33.   When Plaintiff returned to his firehouse, the words "Fat Joe" were spelled out in doughnuts glued to his locker.[2]

34.   Plaintiff complained about the incident to Frank Guzman (Guzman), Senior Firefighter. Guzman responded by telling Plaintiff that it was part of the "games" the firefighters play and directed Plaintiff to "shut up and clean it."

35.   From that day forward, everyone at the firehouse regularly called Plaintiff "Fat Joe." Matthews also frequently told Plaintiff to stop eating so many burritos.[3]

36.   Firefighters at the firehouse also frequently watched pornographic films there, which would cause Plaintiff, who had been sexually assaulted while he served in the military, to have flashbacks of the sexual assault.

37.   In 2017, Plaintiff managed to secure a new soda machine for the firehouse thereby making

---

[1] The firehouse is located in College Point and is commonly referred to by its firefighters as "the Point."
[2] Fat Joe is a Latino American rapper known for his rotund physique.
[3] Burritos are a traditionally Mexican dish.

him responsible for keeping sodas in stock at the firehouse. Plaintiff ordered two Latino brands of soda, a Peruvian brand, Inca Kola, and a Colombian brand. This caused Matthews to respond in a fit of anger claiming that Plaintiff was trying to change the Fire Department and the firehouse to be more Latino.

38.     Firefighters frequently used the firehouse GroupMe group chat ("GroupMe chat"), maintained by firefighters at Ladder 130, to exchange racist statements.[4]

39.     In or about the summer of 2018, Matthews wrote on GroupMe group chat "We got to get rid of these brown guys. Trump was right. Build that wall." Matthews wrote this in response to another Latino American firefighter, Daniel Cortes ("Cortes"), arriving late to work because he forgot he was working that day. This was emblematic of the culture of the firehouse.

40.     On August 13, 2018, Derek Silver ("Silver"), Firefighter, wrote in the GroupMe chat "Now all you need to do is start working on the 'problem Latino' and we'll be in business." Upon information and belief, Silver meant that the firehouse had too many Latinos and he wanted them out of the firehouse.

41.     On August 13, 2018, James Pergamo, Firefighter, wrote in the GroupMe chat "MTPGA" meaning make the Point great again.

42.     On November 8, 2018, Silver wrote in the GroupMe chat, "Joungblood [another firefighter in the firehouse] needed to start taking care of the "Muslim problem."

43.     In or about the fall of 2018, Matthews posted in the GroupMe chat a meme of a baby with a leash attached to it with the caption "Not just for little white kids…. Now!!! Also for lazy brown parents."

_____

[4] The GroupMe chat is intended solely for use to publicize the availability of overtime and exchange important work-related information.

6

44.    Matthews would call Plaintiff, who is of Peruvian descent, a "Colombian drug lord" employing the stereotype that Latinos sell drugs.

45.    In or around the fall of 2018, Pergamo wrote in the GroupMe chat "Good. Uber driver old ass Dominican guy blasting bachata I'd rather take a fucking d-wee." Upon information and belief, Pergamo meant that he would rather drive drunk then be driven by a Dominican playing Dominican music.

46.    On May 22, 2019, Christian Mendler posted a picture in the GroupMe chat of a Colombian soda that was stuck in the soda machine so that Plaintiff would fix it, Matthews responded by saying "Hispanic soda? Even they can't stay vertical in the fh [firehouse]" Upon information and belief, Matthews meant that the only thing Latino firefighters in the firehouse did was sleep all day. Matthews' comment received many likes from white firefighters at the firehouse.

47.    The use of derogatory comments about his race, disability, and military service created a hostile work environment for Plaintiff.

48.    Plaintiff found it extremely difficult to go to work every day while anticipating a hostile environment and knowing that the animus directed toward him on account of his race, disability, and military service would go unpunished.

49.    Throughout his employment, Plaintiff repeatedly complained about the harassment and hostile work environment to Senior Firefighters, Guzman and Joseph Bongiovi, who told Plaintiff that it is just part of the culture.

50.    On April 1, 2018, Plaintiff voluntarily checked into rehab, in which he remained in in-patient service until the end of April 2018.  Thereafter, Plaintiff continued rehab on an out-patient basis for approximately two (2) more months.

51.    In June 2018, Plaintiff sought to return to full-duty with the FDNY.  However, upon his

attempt to return to full-duty, Defendants insisted that Plaintiff take a drug test on June 29, 2018.

52. On the advice of his union attorney, Plaintiff refused to take the drug test as he had never had any prior disciplinary issues nor failed any drug tests and Defendants therefore had no cause to require him to undertake a drug test to return to full duty.

53. Defendants then suspended Plaintiff for thirty (30) days without pay.

54. At the completion of his suspension on July 30, 2018, Plaintiff was not permitted to return to full duty but was assigned "light duty" on the seventh floor at FDNY headquarters. Although Plaintiff continues to work at FDNY headquarters, Plaintiff remains on the Ladder 130 roster.

55. On April 22, 2019, although Plaintiff had already served a thirty (30) day suspension, Plaintiff learned that Defendants were seeking to terminate his employment, suddenly claiming that Plaintiff had attempted to bribe the individual tasked with taking his drug test in June 2018.

56. On April 26, 2019 and again on May 8, 2019, Plaintiff made complaints to the Office of the Mayor of the New York City, stating that he was being subjected to race and disability discrimination.

57. In or around May 2019, Plaintiff also made the same complaint to the FDNY Commissioner, Daniel Nigro.

58. Plaintiff's complaints were forwarded to the FDNY's Equal Employment Office ("EEO"), but Defendants concluded there was no evidence of discrimination.

59. On May 7, 2019, Captain Kinnane, Executive Officer of Defendant FDNY, approached Plaintiff and told him, without giving names, that the higher ups in the chain of command did not want him working on the 7th floor with them anymore because they found out about

Plaintiff's PTSD and were afraid he would "flip out and do something stupid."

60. As a result, Plaintiff, who had been working for ten (10) months on the seventh floor without issue, was abruptly reassigned to fifth floor.

61. However, Plaintiff's reassignment lasted less than a month and, on May 21, 2019, Plaintiff was advised by the Chief of Personnel that Defendants were returning him to work on the seventh floor.

62. In November 2019, the Step I Conference to determine the appropriateness of Defendants' attempt to terminate was held, after having been delayed from an initial date of June 2019.

63. On November 29, 2019, having determined that there was no evidence of any attempt by Plaintiff to bribe the test-taker, the Hearing Officer recommended a penalty of ten (10) days' pay for Plaintiff's refusal to take the drug test.

64. Following the Hearing Officer's decision, Plaintiff was informed by his union attorney, that in his fifteen (15) years of practice with the FDNY, he had never before seen a Hearing Officer side against the Commissioner's Office.

65. Notwithstanding, Defendants continued to seek Plaintiff's termination, and in March 2020 a Pre-Trial Hearing for a Step II Conference was held.

66. During the hearing, the Hearing Officer suggested a fifteen (15) day suspension, less than the thirty (30) day suspension Plaintiff had already served in July 2018.  Moreover, the Hearing Officer strongly suggested that Defendants reconsider and retract their attempts to terminate Plaintiff.

67. Plaintiff's Step II Conference hearing was initially scheduled to proceed on March 17, 2020.  Due to the onset of the COVID-19 pandemic, the hearing was adjourned.

68. In early September 2020, a second Pre-Trial Hearing on the Step II Conference was held. Despite the prior advice of the Hearing Officer, Defendants indicated that they wished to

proceed with the Step II Conference seeking Plaintiff's termination.

69.    Upon information and belief, numerous other firefighters, who actually tested positive during drug tests, were not terminated and were permitted to return to full duty.

70.    Defendants' retaliation against Plaintiff is not limited to formal means.  In September 2020, Plaintiff was notified by a friend that all of his personal belongings stored in his locker at the firehouse in College Point were summarily removed and thrown in the garbage.

71.    Plaintiff's photograph at the firehouse was also defaced with word "Rat" written across it.

72.    On October 1, 2020, Plaintiff filed a complaint with EEO regarding this incident and Defendant has not taken any action.

73.    The effects of the discrimination that Plaintiff suffered linger and continue to negatively affect his health and mental well-being.

74.    Defendants' harassment was sufficiently severe and/or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

75.    Defendants' hostile conduct occurred because of Plaintiff's race, national origin, disability, and military service.

76.    As a result of Defendants' actions, Plaintiff felt humiliated, degraded, victimized, embarrassed and emotionally distressed.

77.    As a result of the Defendants' discriminatory and intolerable treatment, Plaintiff suffered severe emotional distress.

78.    As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, loss of benefits and other compensation. Plaintiff has also suffered emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

79.    Defendants' actions and conduct were intentional and intended to harm Plaintiff.

80.   As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against Defendants.

**AS A FIRST CAUSE OF ACTION**
**FOR RETALIATION UNDER TITLE VII**

81.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

82.   Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

83.   Defendants engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff because of Plaintiff's opposition to unlawful employment practices.

84.   As a proximate result of Defendants' retaliation against Plaintiff, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, deferred compensation, and other employment benefits.

85.   As a further proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name, lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

86.   The conduct of Defendant was outrageous, was done in a deliberate, callous, malicious, and oppressive manner intended to injure Plaintiff, and was done in conscious disregard of Plaintiff's rights. Plaintiff is therefore also entitled to an award of punitive damages.

87.   As a result of the foregoing, Plaintiff has lost wages, benefits, and promotional

opportunities. Furthermore, Plaintiff has suffered mental anguish, emotional distress and loss of enjoyment of life and has incurred damages thereby.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER *42 U.S.C.* § 1981 *(As Amended)*

88.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

89.  42 U.S.C. § 1981(a) states in relevant part as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

90.  Defendants intentionally discriminated against Plaintiff in violation of 42 U.S.C. § 1981 on account of his Latino race.

91.  As a proximate result of Defendants' racial discrimination against Plaintiff, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, deferred compensation, and other employment benefits.

92.  As a further proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

93.  The conduct of defendants was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling plaintiff to an award of punitive damages.

## AS A THIRD CAUSE OF ACTION
## FOR RETALIATION UNDER *42 U.S.C.* §1981 *(As Amended)*

94.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

95.    By the acts and practices described above, Defendant retaliated against Plaintiff for his opposition to and complaints of unlawful discrimination in violation of 42 U.S.C. §1981.

96.    As a proximate result of Defendants' retaliation against Plaintiff, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, deferred compensation, and other employment benefits.

97.    As a further proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name, lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

98.    The conduct of Defendants were outrageous, was done in a deliberate, callous, malicious, and oppressive manner intended to injure Plaintiff, and was done in conscious disregard of Plaintiff's rights. Plaintiff is therefore also entitled to an award of punitive damages.

99.    As a result of the foregoing, Plaintiff has lost wages, benefits, and promotional opportunities. Furthermore, Plaintiff has suffered mental anguish, emotional distress and loss of enjoyment of life and has incurred damages thereby.

## AS A FOURTH CAUSE OF ACTION
## FOR RETALIATION UNDER THE ADA

100.    Plaintiff repeats, reiterates, and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

101.    The ADA prohibits retaliation, interference, coercion, or intimidation against an employee who engages in protected activity.

102.    42 U.S.C. § 12203 provides:

>    Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

>    Interference, coercion, or intimidation. It shall be unlawful to

> coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

103. Plaintiff engaged in protected activity when he complained about discrimination based on his disability.

104. Defendants treated Plaintiff less favorably than his similarly situated counterparts who did not engage in protected activity.

105. Defendant is liable for the acts and omissions of its agents and employees. Defendant, either directly or by and through its agents, retaliated against Plaintiff and caused her injuries, damages, and losses.

106. Defendants' retaliatory conduct was the direct and proximate cause of Plaintiff's injuries, damages, and losses.

107. Defendants' conduct was with malice or reckless indifference to Plaintiff's federally protected rights under the ADA.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER USERRA

108. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

109. USERRA prohibits discrimination in employment against an individual who has performed service in a uniformed service. Specifically 38 U.S.C. § 4311 provides that an employee may not be denied a "benefit of employment" because of the employee's membership in the uniformed service.

110. "Benefit of employment" includes freedom from harassment and the ability to work in an environment free from discrimination, harassment and retaliation.

111. Defendants discriminated against Plaintiff on the basis of his past military service, in

14

violation of USERRA, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of Plaintiff based on his past uniformed service.

112. As a direct and proximate cause of Defendants' actions, Plaintiff has suffered injuries and damages including but not limited to, loss of past and future benefits, damage to professional reputation, and undue pain and suffering.

113. Such violations of USERRA by Defendants were willful and Plaintiff requests an award of liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C).

## AS AN SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER NEW YORK STATE EXECUTIVE LAW

114. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

115.  Executive Law § 296 provides that:

> It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, **race**, creed, color, **national origin**, sexual orientation, **military status**, sex, **disability**, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

116. As described above, Defendants discriminated against Plaintiff on the basis of his disability and past military status, in violation of NYSHRL, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, harassment of Plaintiff based on Plaintiff's disability and military status. As a result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss,

15

for which he is entitled to an award of monetary damages and other relief.

117.  As a result of Defendants' unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

118.  Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

### AS A SEVENTH CAUSE OF ACTION FOR RETALIATION UNDER NEW YORK STATE EXECUTIVE LAW

119.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

120.  New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

121.  Defendants engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff because of his opposition to unlawful employment practices.

122.  Following Plaintiff's complaints, Plaintiff was subjected to a hostile work environment, adverse employment actions, and other retaliatory behavior.

123.  Defendant acted intentionally, with malice or with reckless disregard for Plaintiff's rights, proximately causing Plaintiff mental anguish, pain and suffering, emotional distress, and the loss of income and other related benefits, thereby entitling plaintiff to an award of compensatory damages.

**AS AN EIGHTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER NEW YORK CITY ADMINISTRATIVE CODE**

124.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

125.    The Administrative Code of City of New York § 8-107(1)(a) provides that

> It shall be an unlawful discriminatory practice: for an employer or
> an employee or agent thereof, because of the actual or perceived age,
> **race**, creed, color, **national origin**, gender, **disability**, marital
> status, partnership status, caregiver status, sexual and reproductive
> health decisions, sexual orientation, **uniformed service** or alienage
> or citizenship status of any person... to refuse to hire or employ or
> to bar or to discharge from employment such person or to
> discriminate against such person in compensation or in terms,
> conditions or privileges of employment.

126.    As described above, Defendants discriminated against Plaintiff on the basis of his disability

and past uniformed service in violation of the NYCHRL by, including but not limited to,

subjecting him to disparate working conditions, and denying him the opportunity to work

in an employment setting free of unlawful discrimination and harassment. As a result of

Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has

suffered, and continues to suffer, economic loss, for which he is entitled to an award of

monetary damages and other relief.

127.    As a result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL,

Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress,

including, but not limited to, depression, humiliation, embarrassment, stress and anxiety,

loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is

entitled to an award of monetary damages and other relief.

128.    Defendants' unlawful discriminatory actions constitute violations of the NYCHRL that

amount to willful or wanton negligence, recklessness, and involve a conscious disregard of

the rights of others or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages.

## AS A NINTH CAUSE OF ACTION
## FOR RETALIATION IN VIOLATION OF NYCHRL

129.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein.

130.    The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice for an employer "to retaliate or discriminate in any manner against any person because such person has opposed any practices forbidden under this chapter…."

131.    As described above, Plaintiff engaged in protected activities, including making internal complaints regarding the hostile work environment and harassment of Plaintiff based on Plaintiff's race, national origin, disability, and uniformed service.

132.    As described above, after Plaintiff engaged in activity protected by the NYCHRL, Defendants took adverse actions against Plaintiff that would dissuade a reasonable person from making or supporting a similar complaint of discrimination.

133.    As a result of Defendants' retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

134.    Defendants' unlawful discriminatory actions constitute violations of the NYCHRL that amount to willful or wanton negligence, recklessness, and involve a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages.

18

## JURY DEMAND

135.   Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A.   Declaring that Defendants engaged in unlawful employment practices prohibited by **Title VII of the Civil Rights Act of 1964**, as amended, 42 U.S.C. § 2000e *et. seq*. ("Title VII"), **42 U.S.C.** § 1981 ("Section 1981"), **Americans with Disabilities Act of 1990**, 42 U.S.C. § 12101, *et seq.* ("ADA"), **Uniformed Services Employment and Reemployment Rights Act of 1994**, 38 U.S.C. § 4301-4333 ("USERRA"), the **New York State Human Rights Law**, New York State Executive Law, § 296 ("NYSHRL"), and the **New York City Human Rights Law**, New York City Administrative Code § 8-107 *et seq.* ("NYCHRL") in that Defendants discriminated against Plaintiff on the basis of his race (Latino), national origin (Peruvian), disability (PTSD), and uniformed service;

B.   Awarding damages to Plaintiff for all damages resulting from Defendants' unlawful discrimination and retaliation and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C.   Awarding Plaintiff compensatory damages for mental, emotional and physical injury, emotional distress, pain and suffering and injury to his reputation in an amount to be proven;

D.   Awarding Plaintiff liquidated damages;

E.   Awarding Plaintiff punitive damages;

F.   Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

G.   Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
      May 14, 2021

                              **PHILLIPS & ASSOCIATES,**
                              **ATTORNEYS AT LAW, PLLC**

By:     \_/s/ Marjorie Mesidor\_\_\_\_\_
           Marjorie Mesidor, Esq.
           Joseph Myers, Esq.
           *Attorneys for Plaintiff*
           **Phillips & Associates, PLLC**
           585 Stewart Avenue, Suite 410
           Garden City, New York 11530
           T: (212) 248-7431
           F: (212) 901-2107
           mmesidor@tpglaws.com
           jmyers@tpglaws.com